1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
8                    CENTRAL DISTRICT OF CALIFORNIA
9
10
11   SHARON F. SPOON-ARENDT,          )    No. EDCV 07-1564-RC
                                       )
12          Plaintiff,                 )
                                       )    OPINION AND ORDER
13      v.                             )
                                       )
14   MICHAEL J. ASTRUE,                )
     Commissioner of Social Security,  )
15                                     )
            Defendant.                 )
16   _____)
17
18       Plaintiff Sharon F. Spoon-Arendt filed a complaint on
19   December 14, 2007, seeking review of the decision denying her
20   application for disability benefits.  On July 7, 2008, the
21   Commissioner answered the complaint, and the parties filed a joint
22   stipulation on August 15, 2008.
23
24                          **BACKGROUND**
25                              **I**
26       On March 3, 2005, plaintiff applied for disability benefits under
27   Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, claiming
28   an inability to work since September 15, 1999, due to back, leg and

foot pain.  Certified Administrative Record ("A.R.") 65-67, 68.  The
plaintiff's application was initially denied on April 22, 2005, and
was denied again on July 19, 2005, following reconsideration.  A.R.
48-59.  The plaintiff then requested an administrative hearing, which
was held before Administrative Law Judge Joseph D. Schloss ("the ALJ")
on August 6, 2007.  A.R. 46, 313-25.  On August 18, 2007, the ALJ
issued a decision finding plaintiff is not disabled.  A.R. 7-15.  The
plaintiff appealed this decision to the Appeals Council, which denied
review on October 24, 2007.  A.R. 3-6.

II

The plaintiff, who was born on August 29, 1944, is currently 64
years old.  A.R. 65.  She has previously worked as a salesperson.
A.R. 77, 321.

On November 13, 2000, William B. Aun, M.D., examined plaintiff,
diagnosed her with lumbar radiculopathy,[1] and gave her a lumbar
epidural steroid injection.  A.R. 101-03.  Dr. Aun noted:

> [plaintiff] has had low back pain and radiating [right leg]
> pain all the way down to her [right] foot for about 3
> months.  MRI shows L4-5 disc herniation to the right.  Also
> shown is annulus bulging [at] L3-4 and L4-5.

A.R. 103.  Subsequently, on November 21 and December 6, 2000, Dr. Aun

---

[1]  Radiculopathy is "disease of the nerve roots."  Dorland's
Illustrated Medical Dictionary, 1511 (29th ed. 2000).

gave plaintiff additional lumbar epidural steroid injections.  A.R.
98-100.

On January 24, 2001, N. Johnson, M.D., examined plaintiff and
noted she had experienced back and right leg pain since August 2000.
A.R. 94-95.  Dr. Johnson reviewed a lumbar spine MRI taken September
2000, which showed:

> a small bulge of disk material at L4-5 on the right side,
> consistent with [plaintiff's] pain.  The central canal is
> narrowed.  The nerve root has egressed the canal above this
> and is not involved with it.  This bulge is directly at the
> disk space.

A.R. 94.  A lumbar myelogram taken January 24, 2001, showed a ruptured
disc on the right side at L4-5, where plaintiff had pain.  A.R. 86.
Dr. Johnson also noted stenosis at multiple levels, particularly L5-
S1.  A.R. 87.  On February 8, 2001, Dr. Johnson performed an
intralaminar dissection discectomy and interbody fusion at L4-5 on
plaintiff, finding plaintiff had a large ruptured disc and unstable
space at L4-5.  A.R. 88-89.

Since at least July 2003, plaintiff has received treatment from
Allen Felix, M.D., who has diagnosed plaintiff with lumbago,[2] among
other conditions.  A.R. 106-83, 209-11, 213-308.  Lumbar spine x-rays

---

[2] Lumbago is "pain in the lumbar region."  Dorland's
Illustrated Medical Dictionary at 1029.

taken August 12, 2003, revealed degenerative changes at L4-L5 and L5-S1.  A.R. 188, 305.  Lumbar spine x-rays taken September 15, 2003, revealed mild narrowing at L4-L5 and L5-S1 and moderate narrowing at L3-L4, as well as prominent degenerative changes at L4-L5 and disc space expanders at L4-L5.  A.R. 180, 302.  Cervical spine x-rays taken June 14, 2004, revealed degenerative arthritis and narrowing at C4-C5 and C5-C6 associated with slight stenotic changes in the corresponding neural foramina bilaterally.  A.R. 139, 281.  Lumbar spine x-rays taken September 29, 2004, demonstrated postoperative changes at the L4-L5 disc space with scattered chronic changes and no evidence of acute disease.  A.R. 126, 270.

On October 7, 2003, G. Sunny Uppal, M.D., examined plaintiff and diagnosed her with post-lumbar fusion syndrome.  A.R. 170.  On January 14, 2004, Dr. Uppal diagnosed plaintiff as having pseudoarthrosis,[3] a bulging disc at L3-L4 and collapse of the L5-S1 disc space.  A.R. 193.  A lumbar myelogram revealed postoperative changes at L4-L5 and L5-S1.  A.R. 156-57, 193.  On March 16, 2004, Dr. Uppal reexamined plaintiff, and noted a discogram was positive at L5-S1 and plaintiff had a bulging disc at L3-L4.  A.R. 192.  Dr. Uppal recommended surgery for plaintiff.  Id.

//

//

_____

[3]   Pseudoarthrosis is "a pathological entity characterized by deossification of a weight-bearing long bone, followed by bending and pathological fracture, with inability to form normal callus leading to existence of the 'false joint' that gives the condition its name."  Dorland's Illustrated Medical Dictionary at 1480-81.

1

**DISCUSSION**

2

**III**

3      The Court, pursuant to 42 U.S.C. § 405(g), may review a decision

4  denying a claimant disability benefits to determine whether the

5  Commissioner's findings are supported by substantial evidence and

6  whether the Commissioner used the proper legal standards in reaching

7  his decision.  <u>Sam v. Astrue</u>, 550 F.3d 808, 809 (9th Cir. 2008) (per

8  curiam); <u>Vasquez v. Astrue</u>, 547 F.3d 1101, 1104 (9th Cir. 2008).

9

10      The claimant is "disabled" for the purpose of receiving benefits

11  under the Act if she is unable to engage in any substantial gainful

12  activity due to an impairment which has lasted, or is expected to

13  last, for a continuous period of at least twelve months.  42 U.S.C.

14  § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  "The claimant bears the

15  burden of establishing a prima facie case of disability."  <u>Roberts v.</u>

16  <u>Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1122

17  (1996); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289 (9th Cir. 1996).  Here,

18  plaintiff's disability insured status expired on September 30, 2000,

19  A.R. 12, and she must prove she was either permanently disabled or

20  subject to a condition which became so severe as to disable her prior

21  to that date.  <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1033-34 (9th

22  Cir. 2007); <u>Greger v. Barnhart</u>, 464 F.3d 968, 970 (9th Cir. 2006).

23

24      The Commissioner has promulgated regulations establishing a five-

25  step sequential evaluation process for the ALJ to follow in a

26  disability case.  20 C.F.R. § 404.1520.  In the **First Step**, the ALJ

27  must determine whether the claimant is currently engaged in

28  substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, in

the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities.  20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. § 404.1520(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(g).  Applying the five-step sequential evaluation process, the ALJ found plaintiff did not engage in substantial gainful activity between her alleged onset date of September 15, 1999, and her date last insured of September 30, 2000.  (Step One).  The ALJ then found plaintiff did not have a "severe" impairment prior to September 30, 2000; therefore, she is not disabled.  (Step Two).


**IV**

The Step Two inquiry is "a de minimis screening device to dispose of groundless claims."  Smolen, 80 F.3d at 1290; Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).  The Supreme Court has recognized that including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would

1  be found to be disabled even if their age, education, and experience
2  were taken into account." <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153,
3  107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987).  However, an overly
4  stringent application of the severity requirement violates the Act by
5  denying benefits to claimants who meet the statutory definition of
6  disabled.  <u>Corrao v. Shalala</u>, 20 F.3d 943, 949 (9th Cir. 1994).
7
8      A severe impairment or combination of impairments within the
9  meaning of Step Two exists when there is more than a minimal effect on
10 an individual's ability to do basic work activities.  <u>Webb</u>, 433 F.3d
11 at 686; <u>Mayes v. Massanari</u>, 276 F.3d 453, 460 (9th Cir. 2001); <u>see</u>
12 <u>also</u> 20 C.F.R. § 404.1521(a) ("An impairment or combination of
13 impairments is not severe if it does not significantly limit [a
14 person's] physical or mental ability to do basic work activities.").
15 Basic work activities are "the abilities and aptitudes necessary to do
16 most jobs," including physical functions such as walking, standing,
17 sitting, lifting, pushing, pulling, reaching, carrying or handling, as
18 well as the capacity for seeing, hearing and speaking, understanding,
19 carrying out, and remembering simple instructions, use of judgment,
20 responding appropriately to supervision, co-workers and usual work
21 situations, and dealing with changes in a routine work setting.
22 20 C.F.R. § 404.1521(b); <u>Webb</u>, 433 F.3d at 686.  If the claimant meets
23 her burden of demonstrating she suffers from an impairment affecting
24 her ability to perform basic work activities, "the ALJ *must* find that
25 the impairment is 'severe' and move to the next step in the SSA's
26 five-step process." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1160 (9th
27 Cir. 2001) (emphasis in original); <u>Webb</u>, 433 F.3d at 686.
28 //

1    Here, the ALJ determined at Step Two that plaintiff did not have
2    a severe impairment or combination of impairments prior to
3    September 30, 2000.  However, plaintiff contends the ALJ's decision is
4    not supported by substantial evidence because the ALJ failed to
5    consider the opinion of her treating physician, Dr. Johnson.  The
6    plaintiff is correct.
7
8    The medical opinions of treating physicians are entitled to
9    special weight because the treating physician "is employed to cure and
10   has a greater opportunity to know and observe the patient as an
11   individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987);
12   Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.
13   1999).  Therefore, the ALJ must provide clear and convincing reasons
14   for rejecting the uncontroverted opinion of a treating physician, Ryan
15   v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick
16   v. Chater, 157 F.3d 715, 725 (9th Cir. 1998), and "[e]ven if [a]
17   treating doctor's opinion is contradicted by another doctor, the ALJ
18   may not reject this opinion without providing 'specific and legitimate
19   reasons' supported by substantial evidence in the record."  Reddick,
20   157 F.3d at 725; Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.
21   2008).
22
23   Other than the opinion of the medical expert, Arthur Lorber,
24   M.D., who testified the medical evidence did not show plaintiff had
25   any work-related limitations prior to September 30, 2000, A.R. 318,
26   320, the ALJ addressed almost none of the medical evidence --
27   especially the medical evidence after September 30, 2000.  See A.R.
28   13-14, 318-20.  Yet, "'medical evaluations made after the expiration

1  of a claimant's insured status are relevant to an evaluation of the

2  preexpiration condition.'" Lester v. Chater, 81 F.3d 821, 832 (9th

3  Cir. 1995) (quoting Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir.

4  1988)); see also Lingenfelter, 504 F.3d at 1033-34 n.3 ("'[R]eports

5  containing observations made after the period for disability are

6  relevant to assess the claimant's disability.'" (citation omitted)).

7  Here, Dr. Johnson, who performed lumbar spine surgery on plaintiff

8  only a few months after September 30, 2000, reported plaintiff had

9  experienced back and right leg pain since August 2000, and an MRI

10 taken September 2000 revealed a bulging disc at L4-L5 on the right

11 side, consistent with plaintiff's pain. A.R. 94. Because the

12 September 2000 MRI was "not well visualized[,]" on January 24, 2001,

13 Dr. Johnson obtained a lumbar myelogram and CT Scan, which revealed a

14 ruptured disc at L4-L5 on the right side. A.R. 86. Consistent with

15 this, Dr. Aun noted in November 2000 that plaintiff had been

16 experiencing lower back pain and radiating right leg pain down to her

17 foot for approximately three months and an MRI showed L4-L5 disc

18 herniation to the right and annulus bulging at L3-L4 and L4-L5. A.R.

19 103. Yet, the ALJ did **not** discuss Dr. Aun's medical records and only

20 briefly mentioned Dr. Johnson, in noting Dr. Lorber "comment[ed] on a

21 treating note from January 24, 2001[,] which made *reference* to an MRI

22 *allegedly* performed in September 2000 and which allegedly showed a

23 small bulge of disc material at L4-5 on the right side. . . ." A.R.

24 14 (emphasis in original). In these circumstances, where plaintiff's

25 back injury obviously predated September 30, 2000, the ALJ's analysis

26 was plainly insufficient, Lingenfelter, 504 F.3d at 1033-34 n.3, 1038

27 n.10; see also SSR 83-20, 1983 WL 31249 at *2-3 ("Medical reports

28 containing descriptions of examinations or treatment of the individual

1    are basic to the determination of the onset of disability.  The

2    medical evidence serves as the primary element in the onset

3    determination.  Reports from all medical sources (e.g., physicians,

4    hospitals, and government agencies) which bear upon the onset date

5    should be obtained to assist in determining when the impairment(s)

6    became disabling[,]" and a medical advisor who is required to infer

7    onset date must consider these reports in addressing an onset date),[4]

8    and the ALJ's Step Two determination is not supported by substantial

9    evidence.  Webb, 433 F.3d at 688; Lesmeister v. Barnhart,

10   439 F. Supp. 2d 1023, 1029-30 (C.D. Cal. 2006).

11

12                                 V

13       When the Commissioner's decision is not supported by substantial

14   evidence, the Court has authority to affirm, modify, or reverse the

15   Commissioner's decision "with or without remanding the cause for

16   rehearing."  42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072,

17   1076 (9th Cir. 2002).  "Remand for further administrative proceedings

18   is appropriate if enhancement of the record would be useful." Benecke

19   v. Barnhart, 379 F. Supp. 587, 593 (9th Cir. 2004).  Here, remand is

20   appropriate so the ALJ can properly assess the 2000 MRI and other

21   //

22   _____

23       [4]  The plaintiff's claim that the ALJ did not properly
     develop the record is without merit.  Rather, on December 4,
24   2006, the ALJ returned 108 pages of illegible medical records to
     plaintiff's attorney and gave counsel two weeks to provide
25   legible copies.  A.R. 311.  However, it appears counsel did not
     do so.  A.R. 315-16.  Despite this, the ALJ himself subpoenaed 93
26   pages of these records, id., and at the administrative hearing,
     plaintiff's attorney was unable to identify any further medical
27   records supporting plaintiff's claim, A.R. 316-17, 320, although
     neither the 2000 MRI nor Dr. Dewar's records were in evidence.
28

1    medical evidence to determine whether plaintiff was disabled prior to

2    September 30, 2007.[5]

3

4                                    **ORDER**

5         IT IS ORDERED that: (1) plaintiff's request for relief is

6    granted; and (2) the Commissioner's decision is reversed, and the

7    action is remanded to the Social Security Administration for further

8    proceedings consistent with this Opinion and Order, pursuant to

9    sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered

10   accordingly.

11

12   DATE:  June 9, 2009              /S/ ROSALYN M. CHAPMAN
                                      ROSALYN M. CHAPMAN
13                                    UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25   ─────────────────────

26        [5]   Having reached this conclusion, it is unnecessary for the
     Court to address the other claims plaintiff raises, none of which
27   warrant any further relief than granted herein.

     R&R-MDO\07-1564.mdo
28   6/9/09